**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

C&C NORTH AMERICA, INC., D/B/A
COSENTINO NORTH AMERICA

Plaintiff,

v.

Court No. 26-04092

UNITED STATES,

Defendant.

**COMPLAINT**

**NATURE OF THE ACTION**

1. This action contests U.S. Customs and Border Protection's ("CBP") denial of Protest No. 230425103654, filed on behalf of Plaintiff C&C North America, Inc. d/b/a Cosentino North America ("CCNA"), concerning eleven value Reconciliation Entries and their associated underlying consumption entries.
2. The eleven Reconciliation Entries at issue in this action were filed between July 22, 2025, and October 9, 2025, through Laredo CHB Inc. (hereinafter the "broker" or "customs broker"), at Processing Port 2304, as Aggregate Change reconciliations for the issue of value. Collectively, they covered 596 underlying entries.
3. The Reconciliation Entries were intended to report year-end transfer-pricing adjustments applicable to related-party purchases from Cosentino Latina Ltda. ("CLAT") of merchandise from Brazil. As filed, however, the adjustment was inadvertently reflected by broker in the wrong direction: instead of reducing the aggregate customs value and associated duties and fees on the covered entries as intended, the reconciliations increased them.
4. Based on the broker's updated reconciliation analysis, the eleven protested Reconciliation Entries reflected aggregate deposited duties of approximately $716,857.45, MPF of $55,097.76, and HMF of $19,781.62 before reconciliation. The filed reconciliations increased those amounts to approximately $962,717.47 in duties, $73,062.14 in MPF, and $26,364.80 in HMF.
5. CCNA realized that the underlying 2024 transfer-pricing adjustment applicable to CLAT's sales to CCNA was not treated as a downward credit adjustment. Cosentino supplied its customs broker with the transfer-pricing data and spreadsheets used to prepare the Reconciliation Entries, but the adjustment was reflected by mistake in the opposite direction and added to, rather than deducted from, the customs values. The corrected treatment therefore reduces, rather than increases, the price attributable to the imported merchandise.
6. As filed, the eleven protested Reconciliation Entries resulted in additional assessments of approximately $245,860.02 in duties, $17,964.38 in MPF, $6,583.18 in HMF, and $26,380.39 in Reconciliation interest. The corrected analysis presently identifies approximately $488,909.23 in duty, $31,854.79 in MPF, $13,167.85 in HMF, and $26,380.39 in Reconciliation interest for refund, for a total of approximately $560,312.26.
7. On December 17, 2025, CCNA, through its customs broker, filed Protest No. 230425103654 seeking correction of the overdeclared values. During its review, CBP expressly treated eleven Reconciliation Entries as submitted under the Protest and separately advised the broker that

Reconciliation Entry 8BH-0467641-7, associated with the December 2024 entry population, had not liquidated and therefore could not be protested.

8. During CBP's review, the broker explained that CCNA had discovered that the calculations originally supplied for the 2024 Brazil Reconciliation Entries were incorrect and provided CBP with the original and updated spreadsheets reflecting the claimed corrections. CBP thereafter requested additional supporting documentation, including entry-summary documents, invoices, statements, purchasing agreements, and other proof showing that the reported amounts were incorrect, with a requested submission date of February 24, 2026. The additional substantiating documentation was not provided by broker before CBP acted on the Protest. CBP formally denied Protest No. 230425103654 on March 27, 2026, stating: "Requested documentation to show proof of value changes not submitted."
9. CCNA seeks de novo review of CBP's protest denial, reliquidation of the affected Reconciliation Entries and their covered entries using the correct customs values, refund of duties, fees, and interest paid in excess of the amounts lawfully due, and all other appropriate relief.

**PARTIES**

10. Plaintiff C&C North America, Inc., d/b/a Cosentino North America ("CCNA"), was identified as the importer on each of the eleven Reconciliation Entries at issue and used Importer IRS No. 20-199957900.
11. CCNA is incorporated in the State of Delaware, with its principal U.S. business operations and administrative offices located in Florida and Texas.
12. Plaintiff was the importer of record for the 596 underlying entries associated with the eleven Reconciliation Entries identified in Exhibit A.
13. Defendant is the United States.
14. CBP is the component of the United States Department of Homeland Security responsible for the appraisement and liquidation of imported merchandise, administration of the Reconciliation Program, and review of protests filed under 19 U.S.C. §§ 1514 and 1515.

**JURISDICTION**

15. This Court has exclusive jurisdiction under 28 U.S.C. § 1581(a) because this action contests CBP's denial of Protest No. 230425103654 filed under section 515 of the Tariff Act of 1930, 19 U.S.C. § 1515.
16. This Court has the same powers at law and in equity as a United States District Court and may enter a money judgment against the United States and order other appropriate civil relief. 28 U.S.C. §§ 1585, 2643(a)(1), (c)(1).
17. CBP's protest record identifies March 27, 2026, as the decision date for Protest No. 230425103654, and CCNA received the official denial notification by email on March 27, 2026. Plaintiff has commenced this action by filing a summons within the time prescribed by 28 U.S.C. § 2636(a).
18. The reconciliation headers reflect that CCNA paid additional duties, fees, and interest at the time each Reconciliation Entry was filed. Plaintiff has confirmed before filing that all liquidated duties, charges, and exactions associated with the protested entries have been paid as required by 28 U.S.C. § 2637(a).
19. Plaintiff seeks recovery of amounts already paid in excess of the amounts lawfully due and does not seek to avoid payment of any outstanding liquidated assessment.

## GENERAL PLEADINGS

### The Imported Merchandise and Related-Party Transactions

20. During 2024, CCNA imported natural-stone slabs, including granite, quartzite, and related stone products, manufactured in Brazil by CLAT.
21. CCNA and CLAT are related entities within the Cosentino corporate group. CLAT manufactured natural-stone slabs in Brazil and sold the merchandise to related distribution companies, including CCNA in the United States. Cosentino Group's FY2024 Transfer Pricing Master File likewise identifies CLAT as a Brazilian manufacturing entity and CCNA as a U.S. distribution entity within the Cosentino Group.
22. CCNA distributed the imported merchandise to customers in the United States.
23. The merchandise covered by the underlying entries was appraised using transaction value pursuant to 19 U.S.C. § 1401a(b), including the requirements applicable to transactions between related parties. CCNA has consistently used this related-party transaction-value methodology for the covered merchandise, supported by the applicable intercompany documentation and Cosentino Group transfer-pricing framework. The underlying entries were flagged for value reconciliation so that adjustments affecting the declared transaction values, including applicable year-end transfer-pricing adjustments, could subsequently be reported to CBP through the Reconciliation Program within the applicable reconciliation period.

### The Transfer-Pricing Policy

24. During the relevant period, CLAT operated as a routine or contract manufacturer. CLAT procured natural-stone blocks, processed the blocks into finished slabs, and exported the resulting merchandise to related distribution companies.
25. Under the Cosentino Group transfer-pricing framework, CLAT was to receive an arm's-length return for its routine manufacturing functions.
26. The applicable transfer-pricing methodology used the Transactional Net Margin Method ("TNMM"), with Net Cost Plus ("NCP") as the profit-level indicator. Cosentino Group's FY2024 Transfer Pricing Master File, which was applicable during the period of the covered transactions, independently confirms that the Brazilian subsidiary's manufacturing operations were remunerated under TNMM using Net Cost Plus as the applicable profit-level indicator..
27. Under that methodology, CLAT's operating profit was measured against its total operating costs, and year-end adjustments could be made to bring CLAT's remuneration within an arm's-length benchmark range.
28. Where CLAT's NCP was below the applicable benchmark, CLAT could issue a debit note to related purchasers; where CLAT's NCP exceeded the applicable benchmark, CLAT could issue a credit note.
29. Cosentino's transfer-pricing explanation states that, before the 2024 adjustment, CLAT reported an NCP of approximately 34.14%, and that after the adjustment CLAT's profitability was approximately 5.75%.
30. The same transfer-pricing explanation identifies a total annual 2024 credit adjustment of BRL 41,362,302, stated as approximately USD 6,710,356.01, of which approximately USD 5,698,638.54 was attributable to CCNA.
31. The approximately $5,698,638.54 adjustment attributable to CCNA is reflected in three contemporaneous intercompany credit notes issued by CLAT to CCNA during November and December 2024, in amounts of $1,341,565.20, $4,246,566.86, and $110,506.48, respectively.

Collectively, those credit notes total $5,698,638.54 and identify the amounts as compensatory transfer-pricing adjustments arising from export transactions between CLAT and CCNA.

**The Original and Corrected Transfer-Pricing Analyses**

32. Cosentino Group previously obtained a benchmarking analysis of comparable manufacturing companies for purposes of determining an arm's-length return for the relevant manufacturing activity. That analysis identified eight comparable manufacturers and produced an interquartile NCP range of approximately 3.68% to 5.15%.
33. Deloitte Asesores Tributarios, S.L.U. subsequently reviewed the underlying third-party benchmarking analysis for purposes of assessing its consistency with Brazilian transfer-pricing requirements and OECD transfer-pricing standards. Deloitte concluded that two of the eight companies should be excluded under the applicable comparability criteria.
34. Following Deloitte's review and application of a country-risk adjustment, the resulting interquartile NCP range was approximately 5.01% to 5.94%. CLAT's adjusted NCP of approximately 5.75% fell within that range.
35. The transfer-pricing explanation, Deloitte review, 2024 CCNA transfer-pricing adjustment data, corrected reconciliation materials, and updated entry-level spreadsheet collectively support a downward adjustment to the values attributable to the 2024 imported merchandise.
36. The updated 2024 spreadsheet identifies 665 underlying entries across the January through December 2024 reconciliation population and contains line-level original and revised values, together with corresponding original and revised duty, MPF, and HMF calculations. Of those entries, 596 correspond to the eleven Reconciliation Entries at issue in this action.
37. The revised entry-level reconciliation analysis allocates the approximately $5,698,638.54 CCNA transfer-pricing adjustment on a pro rata basis among the applicable 2024 entries for which CLAT was the exporter and calculates the resulting revised customs values on an entry-level basis. The analysis identifies, among other information, the underlying entry, entered value, applicable ocean freight, negative transfer-pricing adjustment, and resulting value to be reconciled.
38. Cosentino provided its customs broker with the transfer-pricing data and spreadsheets used to prepare the original Reconciliation Entries. After discovering that the adjustment had been applied in the wrong direction, Cosentino provided revised spreadsheets reflecting the corrected treatment. During CBP's protest review, the broker provided CBP with both the original and revised spreadsheets supplied by the client.

**The Eleven Reconciliation Entries**

39. Between July 22, 2025, and October 9, 2025, the broker, on behalf of CCNA, filed the eleven Aggregate Change value Reconciliation Entries summarized in Exhibit A.
40. The eleven Reconciliation Entries at issue covered monthly groups of 2024 entries, beginning with January 2024 entries under Reconciliation Entry 8BH-0466800-0 and ending with November 2024 entries under Reconciliation Entry 8BH-0467640-9.
41. Collectively, the eleven Reconciliation Entries identify 596 associated underlying entries.
42. The broker's original reconciliation analysis reflects aggregate deposited amounts for the eleven protested Reconciliation Entries of approximately $716,857.45 in duties, $55,097.76 in MPF, and $19,781.62 in HMF, and aggregate reconciled amounts of approximately $962,717.47 in duties, $73,062.14 in MPF, and $26,364.80 in HMF.

43. The filed eleven Reconciliation Entries therefore increased the amounts assessed by approximately $245,860.02 in duty, $17,964.38 in MPF, and $6,583.18 in HMF, and CCNA paid approximately $26,380.39 in Reconciliation interest in connection with those filings.
44. The revised entry-level reconciliation analysis, by contrast, applies the approximately $5,698,638.54 CCNA transfer-pricing credit as a negative adjustment and presently identifies reductions of approximately $488,909.23 in duty, $31,854.79 in MPF, and $13,167.85 in HMF for the eleven protested Reconciliation Entries. Together with approximately $26,380.39 in Reconciliation interest paid, the amount presently identified for refund is approximately $560,312.26.
45. Reconciliation Entry 8BH-0467641-7, associated with the December 2024 entry population, is not included in the relief sought in this action. During the protest review, CBP advised the broker that the December Reconciliation Entry had not liquidated and therefore could not be protested. CBP subsequently rejected that Reconciliation Entry on February 19, 2026 to permit correction, and the broker later retransmitted it separately.

**The Protest and Denial**

46. On December 17, 2025, CCNA, through its customs broker, filed Protest No. 230425103654 under 19 U.S.C. § 1514. Although the filing materials referred to twelve affected Reconciliation Entries, during the administrative review CBP expressly treated eleven Reconciliation Entries as submitted under the Protest and separately advised that Reconciliation Entry 8BH-0467641-7 had not liquidated and could not be protested.
47. The Protest expressly stated that “the declared value on the RECON entry(ies) was incorrect,” that “the value on the original filing(s) was miscalculated and overdeclared,” and that the filed Reconciliation Entries were affected by the calculation error.
48. The Protest therefore placed before CBP the same fundamental valuation issue presented in this action: whether the customs values reported through the eleven protested reconciliations overstated the proper value of the imported merchandise.
49. The Protest advised CBP that the filer was providing original and updated reconciliation header and association files showing the differences for the affected reconciliations, together with an Excel workbook containing calculated information for the individual underlying entries.
50. During CBP’s review of the Protest, the broker explained that CCNA had discovered that the calculations originally provided for the 2024 Brazil Reconciliation Entries were incorrect and provided CBP with both the original and updated spreadsheets supplied by the client.
51. CBP thereafter requested additional entry-summary documentation substantiating the claimed value changes, including invoices, statements, purchasing agreements, and other proof showing that the reported amounts were incorrect, and requested submission by February 24, 2026. The additional substantiating documentation was not provided before CBP acted on the Protest.
52. CBP formally denied Protest No. 230425103654 on March 27, 2026, and CCNA received the official denial notification by email that same day. CBP’s stated basis for denial was: “Requested documentation to show proof of value changes not submitted.” The stated basis for denial was therefore the absence of requested substantiation, rather than a stated finding that the corrected valuation methodology was substantively incorrect.
53. Following the administrative denial, CCNA assembled additional materials supporting and substantiating the claimed value changes, including Cosentino Group’s FY2024 Transfer Pricing Master File, Cosentino’s transfer-pricing explanation, Deloitte’s review of the manufacturing benchmarking analysis, the 2024 CCNA transfer-pricing adjustment data, contemporaneous intercompany credit notes totaling $5,698,638.54, corresponding accounting

records, corrected Reconciliation materials, and revised entry-level reconciliation data allocating the CCNA credit adjustment among the affected underlying entries and calculating the corresponding revised customs values..

54. CBP's denial left in place the liquidated values and assessments for the eleven protested Reconciliation Entries that CCNA contends exceed the amounts lawfully due.

**Judicial Review**

55. Under 28 U.S.C. § 2640(a)(1), this Court determines an action contesting the denial of a protest upon the record made before the Court.
56. Accordingly, Plaintiff seeks de novo adjudication of the protested valuation issues and will support its claims with the record developed before this Court.
57. Plaintiff will establish that the relevant transfer-pricing adjustment reduced the price attributable to the covered imported merchandise; that Cosentino supplied the transfer-pricing data and spreadsheets used in preparing the Reconciliation Entries; that the downward adjustment was reflected in the opposite direction in the filed Reconciliation Entries; and that the corrected treatment is supported by Cosentino Group's FY2024 Transfer Pricing Master File, Cosentino's transfer-pricing explanation, Deloitte's review of the manufacturing benchmarking analysis, the 2024 CCNA transfer-pricing adjustment data, contemporaneous intercompany credit notes and corresponding accounting records, the corrected Reconciliation materials, and the revised entry-level allocation data..

**COUNT I**

**Erroneous Appraisement and Liquidation**

58. Plaintiff repeats and incorporates the foregoing paragraphs as though fully set forth herein.
59. CBP is required to appraise imported merchandise in accordance with 19 U.S.C. § 1401a.
60. The year-end transfer-pricing adjustment was a downward credit adjustment applicable to the relevant 2024 transactions between CLAT and CCNA and reduced the amount properly attributable to the covered imported merchandise. For customs purposes, the adjustment was allocated on a pro rata basis among the applicable 2024 entries for which CLAT was the exporter.
61. The adjusted values are supported by Cosentino Group's FY2024 Transfer Pricing Master File, Cosentino's transfer-pricing explanation, Deloitte's review of the underlying benchmarking analysis, the 2024 CCNA transfer-pricing adjustment data, contemporaneous credit notes totaling $5,698,638.54, corresponding accounting records, the corrected Reconciliation materials, and the revised entry-level allocation data identifying the negative transfer-pricing adjustment attributable to the affected underlying entries.
62. The customs broker prepared the filed Reconciliation Entries using the transfer-pricing information and spreadsheets supplied by Cosentino. In preparing those entries, the downward credit adjustment was reflected as an addition rather than a deduction, causing the filed Reconciliation Entries to overstate the customs values of the covered merchandise.
63. Because the customs values were overstated, CBP assessed and collected duties, fees, and interest exceeding the amounts lawfully due.
64. CBP's denial of Protest No. 230425103654 was erroneous, and Plaintiff is entitled to reliquidation of the entries properly before the Court using the correct customs values.

**COUNT II**

**Refund of Excess Duties, Fees, and Interest**

65. Plaintiff repeats and incorporates the foregoing paragraphs as though fully set forth herein.
66. Plaintiff paid the duties, fees, charges, and Reconciliation interest assessed through the eleven protested Reconciliation Entries, including the additional amounts assessed through the filed reconciliations.
67. The amounts paid exceeded the duties and fees properly owed based upon the correct customs values. Based on the broker's updated reconciliation analysis, the amount presently identified for refund is approximately $560,312.26, consisting of approximately $488,909.23 in duty, $31,854.79 in MPF, $13,167.85 in HMF, and $26,380.39 in Reconciliation interest, subject to the Court's determination and final CBP accounting.
68. Plaintiff is entitled to a refund of the excess duties, fees, charges, and interest, together with interest as provided by law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Hold that CBP's denial of Protest No. 230425103654 was contrary to law;
B. Hold that the values used to liquidate the Reconciliation Entries properly before the Court and their covered entries were overstated;
C. Determine the correct customs values of the merchandise based upon the transfer-pricing adjustment and the record developed before the Court;
D. Order the United States to reliquidate the Reconciliation Entries properly before the Court and their covered entries using the correct customs values;
E. Enter judgment refunding the excess duties, fees, charges, and interest paid by Plaintiff in an amount to be established by the record;
F. Award Plaintiff lawful interest, including post-judgment interest as provided by law;
G. Award Plaintiff its costs and such other relief as the Court deems just and appropriate; and
H. Grant such further relief as this Court deems just and proper.

Respectfully submitted,
/s/Scott Johnston
s/Robert Givens
/s/Matias Gallegos
GIVENS & JOHNSTON,
PLLC 950 Echo Lane, Ste. 360
Houston, TX 77024
sj@gjatradelaw.com
Attorneys for Plaintiff

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**C&C NORTH AMERICA, INC. D/B/A COSENTINO NORTH AMERICA v. UNITED STATES**

# COMPLAINT EXHIBIT INDEX AND COVER SHEET

| Exhibit | Title | Description |
|---|---|---|
| **Exhibit 1** | 2024 Value Reconciliation Entry Summary | Summary of the eleven protested Reconciliation Entries, 596 underlying entries, and the current claimed refund calculation. |
| **Exhibit 2** | Protest No. 230425103654 and ACE Protest Record (Composite) | Reasons for Protest, ACE protest summary, ACE decision screen, protest history, and associated-entry screens. |
| **Exhibit 3** | March 27, 2026 Notice of Denial of Protest No. 230425103654 | Formal CBP denial notification stating that requested documentation showing proof of value changes was not submitted. |
| **Exhibit 4** | CBP and Customs Broker Correspondence Regarding Protest No. 230425103654 (Composite) | Correspondence concerning the eleven protested RECONs, December's separate treatment, the broker's explanation of the correction, and CBP's request for substantiating documentation. |
| **Exhibit 5** | Reconciliation Header and Association Files for the Eleven Reconciliation Entries (Composite) | January through November 2024 RECON header and association files for the eleven Reconciliation Entries at issue. |
| **Exhibit 6** | Updated Reconciliation Difference Analysis ("Recon File Difference v2") | Updated broker analysis of original, reconciled, corrected, and refund amounts, including Reconciliation interest. |
| **Exhibit 7** | C. LATINA–CCNA Transfer Pricing Policy Explanation | Explanation of CLAT's manufacturing profile, TNMM/Net Cost Plus methodology, benchmark range, and the 2024 downward credit adjustment attributable to CCNA. |
| **Exhibit 8** | Deloitte FY2024 Manufacturing Benchmark Analysis | Deloitte review of the FY2024 manufacturing benchmarking analysis and the arm's-length TNMM/Net Cost Plus range. |
| **Exhibit 9** | 2024 Intercompany Transfer-Pricing Credit Notes (Composite) | Three contemporaneous CLAT-to-CCNA credit notes totaling USD 5,698,638.54. |
| **Exhibit 10** | 2024 Revised Entry-Level Negative Reconciliation Analysis | Entry-level workpaper showing allocation of the 2024 downward transfer-pricing adjustment and the resulting revised customs values. |
| **Exhibit 11** | Unsworn Declaration of Rogelio Miguel Villanueva Enfedaque Pursuant to 28 U.S.C. § 1746 | Executed CFO declaration regarding the 2024 transfer-pricing adjustment, the reconciliation error, subsequent correction, and supporting records. |

**Notes Regarding Exhibits 4 and 10:**

- **Exhibit 4.** The correspondence includes preliminary refund calculations exchanged during CBP's administrative review. The current corrected calculation is reflected in Exhibit 1 and Exhibit 6.
- **Exhibit 10.** This annual workpaper reflects allocation of the 2024 transfer-pricing adjustment across the full 2024 population. The relief sought in this action is limited to the eleven Reconciliation Entries and 596 underlying entries identified in Exhibit 1.

# EXHIBIT 1

## 2024 VALUE RECONCILIATION ENTRY SUMMARY

| Month | Recon Entry | Filing Date | Entries | Duty Refund | Fee Refund | Interest | Total Claim |
|---|---|---|---|---|---|---|---|
| January | 8BH-0466800-0 | 07/22/2025 | 106 | $80,917.99 | $7,596.27 | $5,433.99 | $93,948.25 |
| February | 8BH-0466870-3 | 07/31/2025 | 50 | $44,561.30 | $4,212.09 | $2,871.19 | $51,644.58 |
| March | 8BH-0466964-4 | 08/01/2025 | 67 | $51,865.99 | $5,165.21 | $3,152.44 | $60,183.64 |
| April | 8BH-0466965-1 | 08/04/2025 | 37 | $28,340.97 | $2,610.45 | $1,632.96 | $32,584.38 |
| May | 8BH-0466966-9 | 08/05/2025 | 39 | $41,235.38 | $3,455.83 | $2,158.88 | $46,850.09 |
| June | 8BH-0467635-9 | 10/02/2025 | 73 | $55,261.48 | $5,144.67 | $3,035.64 | $63,441.79 |
| July | 8BH-0467636-7 | 10/03/2025 | 30 | $29,072.20 | $2,778.03 | $1,487.98 | $33,338.21 |
| August | 8BH-0467637-5 | 10/06/2025 | 64 | $59,058.26 | $5,232.25 | $2,821.58 | $67,112.09 |
| September | 8BH-0467638-3 | 10/07/2025 | 42 | $22,034.06 | $2,283.47 | $968.09 | $25,285.62 |
| October | 8BH-0467639-1 | 10/08/2025 | 20 | $21,291.94 | $1,768.87 | $835.74 | $23,896.55 |
| November | 8BH-0467640-9 | 10/09/2025 | 68 | $55,269.66 | $4,775.50 | $1,981.90 | $62,027.06 |
| **TOTAL** | | | **596** | **$488,909.23** | **$45,022.64** | **$26,380.39** | **$560,312.26** |

*Note: Reconciliation Entry 8BH-0467641-7, associated with the December 2024 entry population, is excluded from the relief sought in this action because CBP advised during protest review that the entry had not liquidated and therefore could not be protested. CBP subsequently rejected that entry on February 19, 2026 for correction, and it was retransmitted separately.*